**E-filed 11/8/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR GASPARD, | No. C 05-3313 JF (PR) |
| Petitioner, | ORDER DENYING PETITION |
| vs. | FOR WRIT OF HABEAS CORPUS |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| Respondent. | |

## I. INTRODUCTION

Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for possession of cocaine base for sale. Cal. Health & Saf. Code § 11351.5. Thereafter, Petitioner filed an amended petition. The Court dismissed the amended petition with leave to amend so that Petitioner could include all of his claims. After dismissing claim two of the second amended petition, this Court ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. After reviewing the papers, the Court concludes that Petitioner is not entitled to habeas corpus relief based on the claims presented and will deny the

petition.

## II. FACTS[1]

On April 12, 2001, shortly before 11:00 p.m. San Jose police officer Ken Tran pulled up behind Petitioner's car and signaled for Petitioner to stop. Petitioner came to a stop only after he turned around; he narrowly missed hitting Tran's car. When Tran approached Petitioner, who was in the driver's seat, he smelled the odor of burnt marijuana. Petitioner did not appear to be under the influence of any controlled substances and told Tran that he does not use either cocaine or methamphetamine. Resp. Exh. E at 2.

Tran asked if he could search Petitioner's person, car and home, and Petitioner gave his consent, stating that the officer could "go ahead and search" and that he possessed "nothing illegal." While searching Petitioner's person, Tran found a plastic bag in Petitioner's sock that contained $2,300 in $100 bills. When asked where the money came from, Petitioner said that it was to pay his rent. A search of the car turned up a half-smoked marijuana cigarette in the ashtray and a whole unsmoked marijuana cigarette underneath a floor board. Id.

Tran then searched Petitioner's rented room, which was across the street from the site of the stop. Petitioner said that he lived there alone and that he was the only one with access to the room. The search revealed a plastic bag containing three other plastic bags, each of which had a rock of cocaine base inside. The bag was found beneath clothing on the upper shelf of Petitioner's closet.

No drug paraphernalia, such as would be used to ingest cocaine base, was found on Petitioner's person, in his car, or in his room. Nor did the searches discover any packaging materials, scales, or documentary evidence of drug sales. A blood test on a sample taken at the time of Petitioner's arrest revealed no traces of cocaine, methamphetamine, opiates, or PCP. Id. at 2-3.

Petitioner was charged with possession of cocaine base for sale. Cal. Health & Saf.

---

[1] The relevant facts are taken from the unpublished opinion of the California Court of Appeal, Sixth Appellate District, People v. Gaspard, H024316, (June 30, 2003), Respondent's Exhibit E.

1  Code § 11351.5.  The information alleged that Petitioner had suffered four prior
2  convictions for selling a controlled substance (Health & Saf. Code §§ 11370(a), (c);
3  11370.2 (a)), had served three prior prison terms for felony convictions (Cal. Pen. Code §
4  667.5 (B)) and had suffered a prior serious felony conviction within the meaning of Penal
5  Code section 667(b) to (i) and 1170.12.  Petitioner later admitted the prior conviction and
6  prior prison allegations.  Exh. E at 3.
7       At trial, an expert witness testified that the circumstances surrounding Petitioner's
8  possession of cocaine base indicated that the substance was possessed for sale.
9  Petitioner's girlfriend testified on his behalf, stating that the money found in Petitioner's
10 sock was a loan she had given him earlier that night in order to pay for rent and groceries.
11 She also testified that she had never seen Petitioner use crack cocaine at any time during
12 their relationship, which at that time had been ongoing for more than five years.  Id. at 3.
13      On September 27 2001, the jury returned a guilty verdict after less than two hours
14 of deliberation.  When determining punishment, the trial court refused to strike the prior
15 serious felony conviction but did strike the prison priors because neither Petitioner's past
16 crimes nor the instant offense involved violence or weapons.   Petitioner was sentenced to
17 a doubled midterm of eight years for the possession for sale and received four three-year
18 enhancements for the prior sales enhancements.  On March 22, 2002, Petitioner was
19 sentenced to a total of twenty years in prison.  Resp. Exh. E at 3-4.
20      On March 25, 2002, the conviction was affirmed on direct appeal.  Petitioner then
21 sought a writ of habeas corpus in the California Court of Appeal, which also was denied.
22 With the assistance of counsel, Petitioner filed a petition for review with the California
23 Supreme Court on August 5, 2003.  This petition, too, was denied.
24      On April 8, 2004, Petitioner filed another petition for writ of habeas corpus in the
25 California Court of Appeal.  When this petition was denied, Petitioner then filed habeas
26 petition in the California Supreme Court.  That petition was denied on March 2, 2005.
27 Petitioner then commenced the instant proceedings in this Court.
28 \\\

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Gaspard313den      3

## III. DISCUSSION

**A.     Standard of Review**

This Court will entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). The Court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 413 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ of the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards... are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

1    A federal habeas court may grant the writ of it concludes that the state court's
2 adjudication of the claim "resulted in a decision that was based on an unreasonable
3 determination of the facts in light of the evidence presented in a State court proceeding."
4 28 U.S.C. § 2254(d)(2).  When deciding on the reasonableness of the state court's
5 findings, the court must presume correct any determination of a factual issue made by the
6 state court unless Petitioner rebuts the presumption of correctness by clear and convincing
7 evidence.  See 28 U.S.C. § 2254(e)(1).

**B.    Petitioner's Claims**

### 1.    Ineffective Assistance of Counsel

Petitioner first claims that his trial counsel's failure to hire an expert witness to testify as to whether or not the cocaine base found in Petitioner's possession was for personal use or sale constituted ineffective assistance of counsel.  A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984).  The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court" for the purposes of 28 U.S.C. § 2254(d) analysis.  See Williams, 529 U.S. at 404-08.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must satisfy two requirements.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard or reasonableness" under prevailing professional norms.  Strickland, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  For the reasons discussed below, the Court concludes that Petitioner has not demonstrated that counsel's actions were either unreasonable or that they resulted in any prejudice to him.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Gaspard313den            5

Petitioner claims that his trial counsel's failure to hire an expert deprived him of a meritorious defense. In support of his claim, Petitioner has submitted a declaration from Stephen M. Pittel, a professor of psychology and forensic consultant, who states that, in his opinion, it was impossible to determine from the evidence at trial whether the cocaine case was possessed for sale or personal use. Second Amended Petition, Exh. A (Decl. of Stephen M. Pittel, PhD.) at 3. Petitioner also attaches a declaration from Sandra Uribe, his appellate counsel, recounting a conversation with Petitioner's trial counsel. During this conversation, trial counsel told Uribe that he considered hiring an expert to opine with respect to Petitioner's possessing the cocaine base, but thought that the testimony would be conceding too much in light of the fact that Petitioner consistently denied that the drugs were his, and that this denial was Petitioner's primary defense. Second Amended Petition at 51.

Respondent contends that the state court was correct in its determination that the testimony of the expert witness "would have been of such little value that [Petitioner's] trial counsel was not remiss in failing to offer it." Resp. Exh. E at 21. The evidence in the record of the lack of cocaine in Petitioner's blood, the packaging of the cocaine base, Petitioner's own denial of cocaine use, and Petitioner's girlfriend's testimony about Petitioner's lack of drug use demonstrates that Petitioner did not suffer any prejudice based on counsel's failure to call an expert. The state appellate court's determination that "[t]he proposed expert testimony had no chance whatsoever of sufficing.... no reasonable probability exists that [Petitioner] would not have been convicted if only his trial counsel had offered such expert testimony at trial" was not unreasonable. Resp. Exh. E at 21.

Even if the expert testimony would have been helpful to the defense, the decision whether or not to call an expert witness ordinarily is a tactical decision to be made by trial counsel. Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. See Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). According to Uribe's

affidavit, trial counsel's decision not to call an expert was an informed decision based upon strategic considerations and was reasonable under the circumstances, especially in light of Petitioner's consistent denial of cocaine use. Pet. Second Amended Complaint at 51. Accordingly, Petitioner has not demonstrated that trial counsel's performance was deficient.

The state court's determination that Petitioner's ineffective assistance of counsel claim was without merit was not contrary to, or an unreasonable application of, established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(1), (2). Accordingly, the Court concludes that Petitioner is not entitled to relief on this claim.

**2. Expert Witness's Improper Reference to an Undisclosed Factor**

Next, Petitioner alleges that an improper reference to an undisclosed factor by an expert witness for the prosecution deprived him of his right to a fair trial. Officer Lisius testified as an expert witness as to whether the cocaine base was an amount for personal use or for sale. When asked the basis of his opinion that the cocaine base was for sale the officer replied,

> "I make the opinion based on all the circumstances, and as we discussed, there is another that I can't bring up, and if you take away any one of the legs of that decision, I would still hold on the same opinion with the exception of if you took away the dope itself."
> Resp. Exh. B (Reporter's Transcript, "RT") at 94.

Outside the presence of the jury, Petitioner's counsel objected to the officer's reference to the undisclosed factor. The trial court ordered that this portion of the testimony be stricken from the record and instructed the jury to disregard it entirely. Resp. Exh. B (RT) at 136-42. The state appellate court determined that the expert witness's improper statement did not deprive Petitioner of a fair trial because the statement was not incurably prejudicial and the trial court correctly issued a proper curative instruction. Resp. Exh. E at 14.

Juries are presumed to follow a court's limiting instructions with respect to the

purposes for which evidence is admitted.  See Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997).  Petitioner has not shown any evidence that indicates that the jury did not comply with the trial court's instructions.  Even if Petitioner could show that the jury instructions were given in error, he would also have to establish that the error was not harmless.  See Brecht v. Abrahamson, 507 U.S. 619 (1993).  Petitioner has not demonstrated that the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Kotteakos v. United States., 328 U.S. 750, 776 (1946).

As the California Court of Appeal concluded, "Lisius's comment, while improper, was fairly innocuous since he did not specifically mention any inadmissible evidence, and it was clear to the jury that [he] was solely an expert witness with no particular knowledge about the case."  Resp. Exh. E at 14-15.  Additionally, it is unreasonable to conclude that a single statement, especially one that was rather vague, would have such an impact on the evidence as a whole that the jury would ignore the court's limiting instruction.

The state court's determination that Petitioner's right to a fair trial was not violated was not contrary to, or an unreasonable application of, established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented at trial.  28 U.S.C. § 2254(d)(1), (2).  Accordingly, this Court finds that Petitioner is not entitled to habeas relief on this claim.

### 3. Use of Prior Conviction to Enhance Petitioner's Sentence Under California's "Three Strikes" Law

Petitioner next contends that the prior conviction used to enhance his sentence under California's "Three Strikes" law was invalid and thus should not have been used to enhance this sentence for his current conviction.  Petitioner bases this argument on his assertion that he would not have pled guilty to the 1998 charge of making terrorist threats if he had known that the conviction could be used against him to enhance the sentence for a future conviction.  He further alleges that, because no one informed him that the conviction could be used to enhance future sentences, his guilty plea was not "voluntary and intelligent" and must be found invalid.  Second Amended Complaint, Exh. D at 7; See

Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).

However, under the circumstances present here, Petitioner cannot challenge the validity of his prior conviction for making terrorist threats.  As the Supreme Court has held,

> "[O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained."
> Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403-04 (2001).

The only exceptions to this prohibition are situations in which there was a failure to appoint counsel in violation of the Sixth Amendment or the state court refused to rule on any properly presented constitutional claims.  Id. at 404, 405-06.  Petitioner's claim does not fit within either of these exceptions.  Moreover, even if Petitioner were able to challenge the prior conviction, his claim would fail on the merits because his guilty plea was, and continues to be, valid.

A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970).  In order to determine whether or not the choice to plead guilty was voluntary and intelligent the circumstances surrounding the plea must be reviewed, focusing particularly on whether or not the defendant was made "fully aware of the direct consequences" of the plea.  See Brady v. United States, 397 U.S. 742, 748-449 (1970); Id. at 755 (quoting Shelton v. United States, 246 F.2d 571, 572 n.2 (1957)).  A "direct consequence" of a plea is one that has "a definite, immediate, and largely automatic effect on the range of the defendant's punishment." See Torrey v. Estelle, 842 F.2d 234, 236 (9th Cir. 1986), cert. denied, 484 U.S. 870 (1987) (quoting Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (1973)).

Although a defendant must be informed of the direct consequences of a guilty plea, neither the trial court nor defense counsel has to inform a defendant of the collateral

consequences of such a plea. See Torrey, 842 F.2d at 236-37. Collateral consequences include the possibility of a future sentence enhancement based on the guilty plea. See United States v. Garrett, 680 F.2d 64, 65-66 (9th Cir. 1982).

The state court's determination that use of Petitioner's prior conviction to enhance the current sentence was proper under California's "Three Strikes" law, was not contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). Petitioner need not be informed of the collateral consequences of his guilty plea in order to make a "voluntary and intelligent" choice to accept the plea. Accordingly, the state court's denial of Petitioner's claim was not an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d)(2). As the California Court of Appeal stated "[t]he record... places [Petitioner] squarely within the spirit of the Three Strikes law." Resp. Exh. E at 18. Accordingly, the Court concludes that Petitioner is not entitled to habeas relief on this claim.

### 4. Violation of the Ex Post Facto Clause

Finally, Petitioner alleges that the use of his 1998 conviction for making terrorist threats as a "strike," which resulted in the doubling of his base sentence, violated the constitutional prohibition against "ex post facto law[s]" because making terrorist threats was not a "strike" offense at the time Petitioner pled guilty to that crime. U.S. Const., Art. I, § 9, cl.3; Cal. Const., Art. I, § 10, cl. 1. Indeed, the offense of making terrorist threats only became a "serious felony" in 2000, after the passage of Proposition 21, which added a number of offenses to the list of strikable, or serious, felonies under California Penal Code § 1192.7. Petitioner claims that because making terrorist threats was not a serious felony at the time of his prior conviction, it may not be used to increase his sentence for his current conviction.

The ex post facto clause prohibits the enactment of laws that retroactively would: (1) make an act done before the passing of the law, which was innocent when done, criminal; (2) aggravate a crime or makes it greater than it was when committed; (3) changes the punishment and inflicts a greater punishment for the crime than the

punishment authorized by law when the crime was committed; or (4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed.  See Stogner v. California, 539 U.S. 607, 611-12 (2003) (citing Calder v. Bull, 3 Dall. 386, 390-91 (1798); Carmel v. Texas, 529 U.S. 513, 519-538 (2000) (discussing Collins v. Youngblood, 497 U.S. 37 (1990), Beazell v. Ohio, 269 U.S. 167, 169-70 (1925) and Calder v. Bull, 3 Dall. 386 (1798)).

      California's courts consistently have held that enhancement for prior serious felony convictions does not violate the prohibition against ex post facto laws.  See People v. Williams, 140 Cal. App. 3d. 445, 448-49 (1983) (citing Ex Parte Gutierrez, 45 Cal. 429, 432 (1873)).  Doubling Petitioner's base sentence was not an increased punishment for the prior conviction but rather an enhancement of the sentence for his current offense. See id. The enhancement is "attributable to [Petitioner's] status as a repeat offender and arise[s] as an incident of the present offense, rather than constituting a penalty for the prior offense." See People v. Jackson, 37 Cal. 3d 826, 833 (1985) (quoting In Re Foss, 10 Cal.3d 910, 922 (1974)).  Petitioner was found in possession of cocaine base in April 2001, well after the amendments to Cal. Pen. Code § 1192.7 became law.  The present crime occurred after the enactment of the statute, and thus prior convictions occurring before the enactment of the statute may be used to enhance the sentence in question.  See Fong v. United States, 287 F.2d 525, 526 (9th Cir. 1961), cert. denied, 366 U.S. 971 (1961); Williams, 140 Cal. App. 3d at 448-49.  Application of an enhancement resulting from a prior conviction is not a violation of the ex post facto clause of the Constitution.  See McDonald v. Massachusetts, 180 U.S. 311, 312-13 (1901); see also United States v. Sorenson, 914 F.2d 173, 174 (9th Cir. 1990) (dismissing ex post facto challenge as meritless), cert. denied, 498 U.S. 1099 (1991).

      The state court's denial of Petitioner's ex post facto claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2). Accordingly, Petitioner is not entitled to relief on this claim.

## IV. CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings. Accordingly, the petition for writ of habeas corpus is denied. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: __11/8/06_____

JEREMY FOGEL
United States District Judge

A copy of this ruling was mailed to the following:

Arthur Gaspard
E-07143/3A02-102L
CSP - Corcoran
P.O. Box 3461
Corcoran, CA  93212

Linda M. Murphy
Deputy Attorney General
CA State Attorney General's Office
455 Golden Gate Avenue
San Francisco, CA 94102-7004